## ARTHUR E. PERRY *vs.* FRANK R. HADLEY.

Bristol.    October 23, 1888. — November 28, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Insolvent Debtor — Mortgage — Fraudulent Preference — Evidence.*

At the trial of an action by an assignee in insolvency to recover the value of a
 stock of goods in a store, as mortgaged in fraud of the insolvency laws, there
 was evidence that the debtor, prior to his insolvency, mortgaged the goods then
 in the store, and agreed to give a new mortgage to cover other goods bought to
 keep up the stock; and that such a mortgage, complete save as to date and sig-
 nature, was taken by the mortgagee to the debtor after he became insolvent
 and when he was confined to his house by illness, and was there executed by
 him with intent to make a fraudulent preference.  The mortgagee was then
 permitted to testify that the debtor had no knowledge of the new mortgage
 until it was ready for execution, and that it was made at the suggestion of his
 counsel to keep up his security.  *Held,* that the evidence was admissible to
 rebut the inference that the mortgagee participated in the fraud.

TORT, by the assignee in insolvency of one Whittier, for the
conversion of certain articles of personal property.   Trial in
the Superior Court, before *Staples,* J., who allowed a bill of
exceptions, in substance as follows.

The plaintiff introduced evidence tending to show that the
defendant, on January 31, 1885, sold to Whittier the stock of
goods and fixtures of a drug store for a fair price, and to secure
a part of the purchase money Whittier gave him his notes and a
mortgage on the same; that Whittier thereupon entered into
possession of the store, and sold goods at retail, and purchased
other goods to replenish the goods sold in the usual course of
the business; that on May 19, 1885, the defendant visited
Whittier, who was confined to his house by illness, taking with
him a mortgage, complete except as to date and signatures, to
secure the same notes, and purporting to cover the goods in the
store, and Whittier signed it; that at that time there was a con-
siderable quantity of goods in the store not included in the first
mortgage ; that Whittier was insolvent and in contemplation of
insolvency on May 19, 1885, and executed the mortgage with a
view to give a preference to the defendant; that the defendant,
at the time of receiving the second mortgage, had reasonable

cause to believe that Whittier was insolvent and in contempla-
tion of insolvency; and that such second mortgage was made in
fraud of the insolvency laws by Whittier.

The defendant, to show that the mortgage of May 19 was
not made with a view to give a preference to him, and that he
did not have reasonable cause to believe that Whittier was in-
solvent or was in contemplation of insolvency, testified, without
objection, that at the time the first mortgage was given by Whit-
tier it was verbally agreed between them that Whittier should
give to the defendant a new mortgage whenever the same should
be called for by him, to cover goods put into the store to replace
goods sold by him in the course of trade, and to keep his security
good ; and that just before the mortgage of May 19 was given
to him by Whittier he had a conversation with Mr. L. T. Wil-
cox, an attorney at law, who had acted as counsel for him in
drawing the first mortgage.  The defendant was thereupon per-
mitted to testify, that during this conversation, which related to
Whittier's affairs, Mr. Wilcox suggested, " It is about time we
had a second mortgage upon that stock, I think, as the substan-
tial part of the stock is changed; in order to make your security
good, it will require another mortgage " ; and that he thereupon
told Mr. Wilcox he had better draw up another mortgage, which
he proceeded to do.  The judge admitted this testimony solely
as bearing upon the good faith and intent of the defendant in
taking the mortgage of May 19.

The jury returned a verdict for the defendant; and the plain-
tiff alleged exceptions.

*H. M. Knowlton*, for the plaintiff.

*F. A. Milliken*, (*J. M. Morton* with him,) for the defendant.

KNOWLTON, J.  One of the questions for the jury, at the
trial in this case, was whether John J. Whittier, when he made
the mortgage, was insolvent, or in contemplation of insolvency;
another was whether he made it with an intent to give the de-
fendant a fraudulent preference; and the third was whether the
defendant had reasonable cause to believe that he was insolvent
or in contemplation of insolvency, and that he intended the
mortgage as a fraudulent preference.

As furnishing an answer to the last of these questions, the
mortgage itself was an important part of the evidence relied on

by the plaintiff, and if, as appears, it was not made in the usual and ordinary course of business of the mortgagor, it would, if unexplained, have established the proposition which the plaintiff sought to maintain.  Pub. Sts. c. 157, §§ 96–98.  *Metcalf* v. *Munson*, 10 Allen, 491.  For, upon the theory of the statute, the defendant ought reasonably to have inferred from it that the mortgagor was insolvent, and that he intended to give a fraudulent preference.  It therefore becomes important for him to eliminate from the transaction, if possible, every element from which such an inference might legitimately be drawn.

For this purpose he was permitted, without objection, to prove that there was an agreement, at the time of giving the former mortgage, that the security should be kept good by making a new mortgage when new goods should replace those sold from day to day.  It appeared by the plaintiff's evidence, that the mortgage in question, complete except as to date and signature, was carried by the defendant to Whittier's house, where Whittier was confined by sickness, and was there executed.  But it might have been argued that this was presumably in pursuance of a request or suggestion of Whittier, from which the defendant ought to have inferred his insolvent condition and his fraudulent purpose.  The defendant was, therefore, rightly permitted to go further, and negative the possibility of such an inference, by showing that the making of the mortgage resulted directly from the suggestions of the defendant's counsel, and that the debtor had nothing to do with it until it was ready for his signature.

The conversation with Mr. Wilcox was not admitted to prove the truth of the statement made by him, but only as a circumstance explaining the origin of the mortgage, and rebutting the natural inference from the unexplained making of such a conveyance, that the mortgagor had a fraudulent purpose, and that the mortgagee ought to have believed that he had it.  In a case of this kind, facts known to the mortgagee, which tend to explain the making of the mortgage consistently with the innocence of the mortgagor, are competent, not only upon the question what inferences should have been drawn by the mortgagee in regard to the mortgagor's purpose and intent, but also upon the question what was in fact his purpose and intent.

*Exceptions overruled.*